UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA CASE** | **NO. 6:13-CR-000137** |
| **vs.** | **JUDGE FOOTE** |
| **SHAWN A. JOLLIVETTE** | **MAGISTRATE JUDGE HILL** |

### REPORT AND RECOMMENDATION

The defendant, Shawn Jollivette ("Jollivette"), was originally indicted in a one count indictment charging him with interstate transportation of a stolen motor vehicle in violation of 18 U.S.C. § 2312. [Record Doc. 1]. A superseding indictment was later returned adding an additional charge, that is, possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [Record Doc. 21].[1] The defendant filed a motion to suppress a statement which he allegedly made to law enforcement officers on August 7, 2013.[2] [Record Doc. 30]. The undersigned held a hearing on the motion, and took the matter under advisement, after a post-hearing memorandum was filed by counsel for the defendant. [Record Doc. 3].

For the following reasons, the Court recommends that the motion to suppress be **denied**.

---

[1] A forfeiture count was also added.

[2] The evidence at the hearing showed that the statement was actually given on August 8.

**Facts**

On March 27, 2013, Jollivette escaped from a road crew detail in Marksville, Louisiana where he was serving a state sentence. Jollivette was arrested the next day in Pensacola, Florida. Apparently, Jollivette told the arresting officers that there might be a weapon (which a friend had given him) in the vehicle in which he was traveling. Law enforcement agents recovered a 9 mm handgun and ammunition from the car. It is this handgun and ammunition which forms the basis of the felon in possession count of the indictment. The vehicle in which Jollivette was riding was apparently stolen.

Jollivette was returned to Louisiana and housed at the Winn Correctional Center in Winn Parish, Louisiana. On August 8, 2013, Special Agent Lawrence Goldsmith ("Goldsmith"), federal Bureau of Alcohol, Tobacco and Firearms ("ATF") and deputy Lafayette City Marshal Shane Duplechin ("Duplechin") drove to Winn Parish in Duplechin's police unit to transport Jollivette to Lafayette for his initial appearance in court. During this trip, Jollivette allegedly made incriminating statements to Goldsmith (which were heard by Duplechin), which the government intends to introduce at trial. It is these statements which the defendant seeks to suppress.

Goldsmith and Duplechin testified at the hearing on the motion to suppress. Goldsmith testified that they traveled to Winn Parish in Duplechin's police unit because they considered Jollivette a flight risk and Duplechin's police unit had a "cage" in the back seat to keep Jollivette secure during the trip. Goldsmith testified that he had

previously investigated Jollivette for possible federal firearms violations. In fact, Jollivette had executed a *Miranda* waiver form on July 12, 2010 before being questioned by Goldsmith in the prior investigation.[3]

During the trip to Lafayette, Goldsmith testified that Jollivette initiated a conversation with Goldsmith by asking Goldsmith, in essence, why he was being transported to Lafayette by the officers. Goldsmith testified that he stopped Jollivette and told Jollivette that it was going to be necessary for him, Goldsmith, to give Jollivette his *Miranda* rights before they could talk. Thereafter, Goldsmith read Jollivette his *Miranda* rights from an ATF form which Goldsmith carries with him. In addition to reciting the *Miranda* rights, the ATF form includes waiver language which Goldsmith also read to Jollivette. Goldsmith testified that Jollivette said that he understood his rights and was willing to waive them. Thereafter, Goldsmith began to question Jollivette. Jollivette, who was in shackles inside the "cage" in the back seat of the police unit, did not sign the *Miranda* waiver form.

Goldsmith testified that neither he nor Duplechin threatened or intimidated Jollivette.

On cross-examination, Goldsmith acknowledged that in his ATF report he did not report that he had given Jollivette the *Miranda* warnings. Goldsmith also acknowledged that his report was in error by reporting that the transport occurred on August 7 instead of

---

[3] This ATF standard Advice of Rights and Waiver form, signed by Jollivette, was introduced at the hearing.

August 8.[4] Goldsmith acknowledged that his report also did not indicate that Jollivette initiated the conversation. Rather, the report simply states that Goldsmith and Duplechin conducted a custodial interview of Jollivette during the transport from Winn Parish to Lafayette.

Additionally, Goldsmith confirmed that nowhere in his report did it indicate that Jollivette was unable to sign the waiver because he was shackled. However, as pointed out by Goldsmith, the second page of his report *does* indicate that the Advice of Rights and Waiver form was an attachment to the report.[5] Goldsmith also testified, on cross-examination, that in his experience is not unusual for an individual who is being questioned to indicate his understanding of his rights, and to agree to waive them, yet refuse to sign the waiver form. Goldsmith acknowledged that he never attempted to have Jollivette sign the waiver form once they reached Lafayette and Jollivette was unshackled.

Deputy Duplechin also testified. Duplechin is a deputy Lafayette City Marshal; he works in the warrants division. Duplechin is currently assigned to the United States Marshal's Office Violent Offender's Task Force. Duplechin confirmed that he and Goldsmith went to the Winn Parish Correctional Facility to transport Jollivette to

---

[4] ATF form 3200.4, the *Miranda* Advice of Rights and Waiver form used by Goldsmith was introduced at the hearing. The form shows that both Goldsmith and Duplechin witnessed the *Miranda* advice. In the location provided for the signature of the person waiving his rights, the following appears: "no signature subject shackled". Government Ex. 1.

[5]Exhibit D-1.

Lafayette for a court appearance. Duplechin characterized Jollivette as a flight risk. Duplechin was driving his police vehicle.

Duplechin testified that shortly after the trip began Jollivette asked why he was being transported. Duplechin further testified that Goldsmith told Jollivette that before he, Goldsmith, could talk to Jollivette that the *Miranda* advice of rights was necessary. Duplechin testified that Goldsmith then opened up a folder and began reading the *Miranda* advice to Jollivette. Duplechin testified that Jollivette indicated that he understood his rights and waived them so as to talk to Goldsmith. Duplechin confirmed that Jollivette was not coerced or intimidated.

On cross-examination, Duplechin confirmed that he did not write any reports on the transport or statements allegedly made by Jollivette. He testified that he would only write such reports if he were the arresting officer. Duplechin further testified that on the day after the transport, August 9, Goldsmith called Duplechin and asked Duplechin to come to the ATF office to witness the ATF *Miranda* waiver form. This Duplechin did, dating the form August 8. Duplechin testified that he dated the form August 8, even though he signed it on August 9, because August 8 was the date when the *Miranda* form was read to Jollivette and the date that he, Duplechin, witnessed the *Miranda* waiver.

**Law and analysis**

The law in this area is well-settled. When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the

evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial. *United States v. Clay*, 408 F.3d 214, 221 (5th Cir. 2005) citing *United States v. Bell,* 367 F.3d 452, 461 (5th Cir. 2004) (citing *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

As regards the waiver by a defendant of his *Miranda* rights, the Fifth Circuit, in *United States. v. Oliver,* 630 F.3d 397 (5th Cir. 2011), recently summarized the law as follows:

> A suspect may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly, and intelligently." (citation omitted) "For [a] confession to be admissible at trial the government ha[s] to show that [the defendant] was informed of his *Miranda* rights and that his waiver thereof and the resultant confession were the product of a free and deliberate choice." (citation omitted) (internal quotation marks omitted); . . . . Whether a defendant has waived his rights under *Miranda* "present[s] a factual question for the district court." (citation omitted) "Such waivers may be direct or, in some instances, they may 'be clearly inferred from the actions and words of the person interrogated.' (citations omitted) "The mere refusal to sign a written waiver does not automatically render inadmissible all further statements made by the defendant."(citations omitted) Indeed, "[a] refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstance of custody." (citations omitted) Moreover, "a suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police.

At 409-10.

The only evidence presented at the hearing on the motion to suppress was the testimony of Special Agent Goldsmith and Deputy Duplechin. Their testimony was unequivocal – Goldsmith read Jollivette his *Miranda* rights, Jollivette indicated he understood those rights and freely and voluntarily spoke to Goldsmith. There is no

contradictory evidence.

Apparently, the defendant relies on the absence of an affirmative statement in the body of the ATF report by Goldsmith that he gave Jollivette his *Miranda* rights, and that Jollivette thereafter waived those rights, to discredit the testimony of Goldsmith and Duplechin. The Court does not find the absence of such a statement in the ATF report to be significant, particularly where the report indicates that the ATF waiver form is attached to the report.

Similarly, the Court does not find it significant that the ATF report written by Goldsmith fails to state that Jollivette initiated the initial conversation. The report accurately states that Goldsmith conducted a custodial interrogation of Jollivette. The fact that Jollivette initiated the conversation might have made report more complete, and at least somewhat bolstered Goldsmith's testimony, but that omission is not significant, particularly in light of Duplechin's testimony which supports Goldsmith's testimony in this regard. Duplechin's testimony completely corroborates Goldsmith's testimony regarding the advice by Goldsmith to Jollivette of his *Miranda* rights, and Jollivette's subsequent waiver thereof.

Finally, the fact that Duplechin post-dated his signature the day before he actually signed the waiver is also insignificant. The Court finds Duplechin's testimony, to wit, that he dated the *Miranda* form on the date that he witnessed the waiver rather than the date that he signed the form, to be reasonable and truthful.

In essence, the defendant argues that the testimony of Goldsmith and Duplechin should be disregarded by the Court because of perceived inaccuracies, inconsistencies and omissions between their testimony at the hearing and the written reports. The Court does not find these inaccuracies, inconsistencies and omissions, to the extent they actually exist, to be significant.

The Court carefully observed the demeanor of Agent Goldsmith and Deputy Duplechin during their testimony; the Court questioned both witnesses. The Court finds the testimony of Agent Goldsmith and Deputy Duplechin to be credible. The Court finds, as fact, that the defendant was given his *Miranda* rights by Agent Goldsmith. The Court further finds as fact that Jollivette understood his rights and voluntarily waived his *Miranda* rights when he began talking to Goldsmith.[6] This waiver was witnessed by Deputy Duplechin. There is no legal requirement that the defendant sign a *Miranda* waiver. Waiver can be inferred from the circumstances, and the Court makes that inference here. There is absolutely no evidence, and in fact no allegation, of force, coercion or intimidation being used by Goldsmith or Duplechin to force Jollivette to give a statement.

Accordingly, the Court holds that Jollivette was properly advised of his *Miranda* rights, that he waived those rights and that the statements made to agent Goldsmith were

---

[6] The fact that Jollivette had been *Mirandized* before supports the Court's conclusion that Jollivette understood his *Miranda* rights. On prior occasions, Jollivette had waived his *Miranda* rights and spoken to law enforcement officers and, on other occasions, had exercised his *Miranda* rights and refused to talk.

freely and voluntarily made. Accordingly, all such statements are admissible at trial.

For these reasons, the undersigned recommends the motion to suppress filed by the defendant be **denied**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.**  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

March 20, 2014, Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

To: KK
On: 3/20/2014
By: MBD